DUESENBERG *v.* DUESENBERG, INCORPORATED.

[No. 14,971.   Filed November 29, 1933.   Rehearing denied May 18, 1934.]

*Harvey B. Hartsock* and *Charles M. Wells,* for appellant.

*James L. Murray,* for appellee.

SMITH, J.—This is an appeal from an award made by the majority of the Full Industrial Board of Indiana. There was a finding against appellant, and an order

entered by a majority of the Full Industrial Board, denying compensation to appellant.

Appellant filed her application before the Industrial Board asking compensation for the death of her husband, caused by an accidental injury arising out of and in the course of his employment, on the second day of July, 1932, which resulted in his death on the 26th day of July, 1932.

From the award denying compensation, appellant appeals to this court, and assigns as error that the award of the Industrial Board is contrary to law.

The case was submitted to the Industrial Board upon an agreed statement of facts, and no further evidence was introduced. The facts, as agreed upon, show that one Frederick S. Duesenberg died on the 26th day of July, 1932, as a result of an accidental injury sustained in an automboile wreck on July 2, 1932, at about 11:30 o'clock a. m., in the state of Pennsylvania, while the decedent was driving a Duesenberg automobile owned by appellee from Philadelphia, Pennsylvania to Indianapolis, Indiana; that said decedent left surviving him as his only dependent under the Indiana Workmen's Compensation Law of 1929, his widow, the appellant herein, with whom he was living at the time of his injury and death; that the only question in dispute between appellant and appellee is whether or not Frederick S. Duesenberg was an employee of Duesenberg, Incorporated, within the meaning of "employee" as used in the Indiana Workmen's Compensation Act; that about 1920, the Duesenberg Automobile and Motor Company, Incorporated was organized and part of the stock was owned by appellant's decedent who was president of the company; that in 1924, after said company went into receivership, a new company called Duesenberg Motors Company was formed, with appellant's decedent as president, and took over the property and business of the first com-

pany; that in 1926, this second company became financially embarrassed, and a new company, the appellee herein, was organized, and took over the assets and liabilities of the Duesenberg Motors Company; that its authorized capital stock was 75,000 shares of class "A," and 200,000 shares of class "B" stock, all without par value; that at the time of decedent's death, 45,300 shares of class "A" and 86,991 shares of class "B" stock had been issued, and were outstanding; that of this stock, the Auburn Automobile Company owned the controlling interest; that the Cord Corporation owned a large interest in the Auburn Company, and had outstanding 2,260,000 shares of common stock, of which the decedent owned 200 shares; that the decedent at the time of his death owned 78 shares of class "B" stock of appellee, and "held the legal but not the equitable title" to 5,000 more shares of class "B" stock; that appellant's decedent had never received any dividends on any of the stock, and his family relied for its livelihood wholly upon the compensation received by decedent from appellee; that compensation paid to appellant's decedent by appellee was $15,000 per year and was paid in monthly installments.

That, following said reorganization and until his death, decedent was a vice-president of appellee, and the services which he rendered appellee "consisted solely of carrying on defendant's engineering and experimental work, of which he was in charge, he being subject, however, to the supervision and directions" of other officers of appellee and "indirectly of Messrs. Cord and Manning, officers of the Cord Corporation with regard to the general engineering and experimental policies and programs" of appellee, and frequently reported to them; that the decedent handled the details of the engineering and experimental work with the assistance of five draftsmen and designers who worked under him; that

a part of the duties of decedent was the employing and discharging of these assistants, subject, however, to the approval of Mr. Ames, or Mr. Watson, who were officers of the appellee; that nearly all of decedent's time was spent in drawing plans for automobiles and motors, in supervising the construction of newly designed motors, and in developing new automotive devices; that in drawing plans the decedent worked entirely with drafting instruments, and in his other work he frequently handled and used other tools and instruments; that decedent was not free to work when and if he chose, but in the performance of his duties he worked every day the factory worked; that neither he, nor any other of the several persons who worked in the office of appellee, punched a time clock; that he absented himself from work only upon obtaining consent of the said Ames or Watson; that on June 30, 1932, said decedent was instructed by the other officers to go to Philadelphia for the purpose of making an inspection of some government engines in the Philadelphia Navy Yard; that decedent left Indianapolis by train for Philadelphia to perform this service for the purpose of learning some facts relative to the construction of an airplane motor which was then in use by the Navy; that such facts would be helpful to said decedent in his design of a similar motor, the building of which was then being contemplated by appellee.

It appears that said decedent had designed and perfected a new motor which had been placed in a new model automobile which was then in the possession of appellee's agency in New York City; that a report had been made that the engine was defective in some way, and the decedent sent a telegram from the train at Columbus, Ohio, telling appellee if it still wanted this automobile from New York to instruct the agency in New York to deliver the car to Philadelphia, and he

would drive same home; that such arrangements were made, and on July 2, 1932, under the direction of appellee, the decedent started for Indianapolis with said automobile, and, while in the act of driving it on highway No. 30 in Pennsylvania, the accident happened which resulted in his death; that said decedent's working hours were spent entirely in engineering and experimental work for Duesenberg, Incorporated, he occasionally working overtime at the factory or his home without compensation.

Upon this agreed statement of facts, the hearing member found against appellant, and entered an order denying compensation, from which order an application for review was made to the full board. On the 20th day of March, 1933, a majority of the members of said Board found "That on July 2, 1932, one Frederick S. Duesenberg sustained an accidental injury while in the service of the defendant and that at the time of said accidental injury, the said Duesenberg was being compensated by the defendant in the sum of $288.46 a week; that the said Frederick S. Duesenberg was not an employee of the defendant within the meaning of the Indiana Workmen's Compensation Act." The Board entered an order that appellant take nothing by her complaint and pay the costs of this proceedings.

A similar question to the one herein presented was before this court in the recent case of *Holycross & Nye* v. *Nye* (1933), 97 Ind. App. 372, 186 N. E. 915, in which it was said that:

"The difficulty in laying down a hard and fast rule defining just when an officer, director and stockholder, or any of them, may be an employee within the Workmen's Compensation Act lies in the fact that each individual case must depend largely upon its own particular facts and circumstances."

In *Holycross & Nye* v. *Nye, supra,* this court cited and quoted from the case of *In re Raynes* (1917), 66 Ind. App. 321, 118 N. E. 387, in which this court said upon the subject of who is an employee under the Workmen's Compensation Act:

> "In a general way, it is an employee whose remuneration is popularly designated as wages rather than salary; whose compensation for service is not munificent; . . . whose labor is manual, or of a like degree of industrial or commercial importance as manual labor when viewed from the standpoint of individual accomplishment."

It was further said by the court "that neither of these tests is decisive," but they do form some basis for a rule which may be applied to determine when one is an employee under the Act.

Appellant's decedent did not own the controlling interest in the appellee corporation, but was an officer therein, and owned a small portion of its capital stock, and was receiving compensation at the rate of $15,000 per year, and was paid upon a monthly basis. It could scarcely be claimed that his remuneration could be designated as wages, and that his compensation for services was not munificent, nor could it be said that his services were manual labor, or of a like degree of industrial or commercial importance as manual labor, when viewed from the standpoint of individual accomplishment. He spent his time entirely in the engineering and experimental work for appellee, and was in charge of that work, and had the authority to employ and discharge his helpers subject to the approval of other officers. He was not a workman in the sense that is meant by the Indiana Workmen's Compensation Act, nor by the decisions in this state. It is not necessary in determining this case to look outside of our own state and our own court for authority. The question here presented has been passed upon by this

court in the following cases, which we think support the conclusion reached herein: *In re Raynes, supra; Manfield & Firman Co.* v. *Manfield* (1932), 95 Ind. App. 70, 182 N. E. 539; *Holycross & Nye* v. *Nye, supra; Holycross & Nye* v. *Holycross* (1933), 97 Ind. App. 706, 187 N. E. 55.

Appellant cites numerous decisions from other jurisdictions than our own. These cases have all been reviewed, and many of them were cited in the briefs in *Holycross & Nye* v. *Nye, supra,* and were considered by the court in that case. In many of the cases cited by appellant where compensation was given to an officer, stockholder, or director of a corporation, an insurance carrier was involved, and the salary or compensation paid to such a person was taken into consideration by the insurance carrier in fixing the insurance premium. No insurance carrier is involved in the instant case.

Following the reasoning of our own court, we adhere to the doctrine that one may be an officer, director, and stockholder of a corporation, and still be an employee entitled to compensation under the Workmen's Compensation Act. In the instant case, there being no dispute as to the facts, the question whether appellee is an employee within the meaning of the Workmen's Compensation Act, is a question of law. Upon the authority of the cases of our own court above cited, we hold that the award of the Industrial Board herein is not contrary to law, and is therefore affirmed.

Kime, J., Dudine, J., dissent.

DISSENTING OPINION.

DUDINE, J.—I can not concur in the majority opinion.

The decision that decedent was not a "workman" within the meaning of the Workmen's Compensation

Act, is based, in said majority opinion, on three conclusions of fact, namely : (1) that decedent's compensation could not be "designated as wages" rather than salary, (2) that his compensation was "munificent," (3) that his services were not "manual labor, nor of a like degree of industrial or commercial importance as manual labor, when viewed from the standpoint of individual accomplishment." (Quotations from majority opinion.)

With reference to said conclusions of fact, I wish to say that I find no provision in the Workmen's Compensation Act as amended (1929) which excludes employees, who fall within the groups of employees suggested in said conclusions of fact, from the beneficiaries of said Act.

The case of *In re Raynes* (1917), 66 Ind. App. 321, 118 N. E. 387, is relied upon, in the majority opinion to support such a construction of the Workmen's Compensation Act.

It should be noted that said opinion was an opinion on certified questions of law submitted by the Industrial Board, and not a decision of this court upon an appeal from an award of the Industrial Board. It should also be noted that in said opinion this court construed the Workmen's Compensation Act of 1915, as amended prior to 1929, and did not construe the Act as amended in 1929.

Disregarding said observations, however, I do not think that said case is authority for holding that if an employee's compensation cannot be designated as wages, rather than salary, or if his compensation is munificent, or if his services are not manual labor or not of a like degree of industrial or commercial importance as manual labor when viewed from the standpoint of individual accomplishment, he is not an employee within

the meaning of the Workmen's Compensation Act, as amended in 1929.

In that opinion this court merely advised the Industrial Board that "it is not a very hard problem to determine *in a general way* the sort of employees intended to become its (The Workmen's Compensation Act's) beneficiaries, although difficulties may present themselves in applying the general standard to the individual case. In a *general way* it is an employee whose remuneration is popularly designated as wages rather than salary,. whose compensation for services is not munificient, . . . whose labor is manual, or of a like degree of industrial or commercial importance as manual labor when viewed from the standpoint of individual accomplishment." (My italics.)

To emphasize the fact that, by said language, it was laying down *general rules* to *guide,* and *help* the Industrial Board in determining, in various cases, whether or not an applicant for compensation was an "employee," this court supplemented said language as follows: "We should not be understood as indicating that any of these tests are decisive, or that one whose earnings are designated as salary, . . . or whose wage is materially more than $24.00 per week, or whose labor is other than manual is not entitled to compensation under the Act." That language, it seems to me, *says,* in effect, that said case is *not* authority for the decision of the majority of this court.

This court said further in that opinion that it was "merely *formulating a concept in a general way of the sort of person that may be deemed to be an employee within the meaning of the Act."* (My italics.) It was not formulating a set of tests by which the Industrial Board could determine whether or not an applicant for compensation was or was not an "employee."

I do not find fault in said opinion; on the contrary I

consider it very valuable for the purpose expressed therein, but not for the purpose for which it was relied upon in the majority opinion, to wit, of determining whether or not the Workmen's Compensation Act excludes said groups of employees as beneficiaries thereof.

Sec. 9518, cl. b, Burns Supp. 1929 provides that unless the context of the Act requires otherwise, the word employee "shall include every person, including a minor lawfully in the service of another under any contract of hire or apprenticeship, written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation or profession of the employer. . . ." It is my opinion that the context of the Act does not "require otherwise." The context of the Act is consistent and reasonable without a different construction of the word "employee." The legislature not having written into the Act any provisions for the exclusion of said groups of employees as beneficiaries thereof, this court is not authorized to read such provisions into the Act.

The other cases cited in the majority opinion are not applicable to the instant case, because in each of them the decision was based upon the fact that the applicant for compensation owned a large portion of the stock of the defendant corporation, and insofar as the Workmen's Compensation Act was concerned such applicant was considered a partner in the management of the business, and the applicant was not "in the service of another for hire." In the instant case decedent owned a very small part of the stock of the corporation and could not reasonably be considered a "partner" in the management of the business of appellee corporation.

The facts, which were stipulated, indisputably show that decedent was injured while driving an automobile for the purpose of detecting defects in its mechanism,

and thereafter advising and supervising the correction of the defects. I readily admit that in so doing he was not engaged in "manual labor," in the ordinary sense of that term, but the Workmen's Compensation Act does not limit its benefits to employees who are engaged in manual labor.

I think the facts set forth in the majority opinion indisputably show that decedent at the time of his injury was "lawfully in the service of another under (a) . . . contract for hire," and that his employment was not casual, but was "in the usual course of the trade, business, occupation or profession of the employer." Sec. 9518, cl. b, *supra*. Therefore, I think the award of the Industrial Board should have been reversed, and that said Board should have been instructed to render an award in favor of appellant.