### SINDELAR et al. v. LIBERTY MUT. INS. CO.

#### No. 9123.

Circuit Court of Appeals, Seventh Circuit.

May 9, 1947.

Rehearing Denied June 19, 1947.

Vincent O'Brien, John Merrill Baker, John H. Letsinger, and Defrees, Fiske, O'Brien & Thomson, all of Chicago, Ill., for appellants.

James J. McKenna and B. S. Quigley, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's suit for failure to state a cause of action. The complaint so far as now material alleges that Joseph C. Sindelar while president of E. W. A. Rowles Co. was accidently injured on March 23, 1944, in an automobile accident while engaged in the performance of duties for and on behalf of E. W. A. Rowles Co.; that, as a result of these injuries, he was totally incapacitated and was confined to a

hospital for medical, surgical and nursing care for a period beginning with the date of his injury on March 23, 1944, and ending with his death on December 1, 1944; that on March 31, 1943, the defendant issued to the E. W. A. Rowles Co. the standard workmen's compensation and employers' liability policy set out haec verba in the complaint; that said policy was in full force and effect from March 31, 1943 to March 31, 1944, and that during said period the defendant required E. W. A. Rowles Co. to pay, and it did pay, to defendant premiums thereon computed on the remuneration earned by its employees, including the remuneration earned by Joseph C. Sindelar as president.

The complaint contained two counts. In the first, the plaintiff Robert J. Sindelar, as executor of the estate of Joseph C. Sindelar, deceased, sought recovery for medical, surgical and hospital expenses incurred following decedent's fatal accident on March 23, 1944, and for disability benefits accruing to decedent. In the second count, Carolyn L. Sindelar, surviving widow of Joseph C. Sindelar, deceased, seeks recovery for death benefits.

The sole question for decision is whether the policy sued upon provided insurance against accidental injuries sustained by Joseph C. Sindelar, president of E. W. A. Rowles Co., such injuries having been sustained while performing duties in his official capacity, which he or persons acting in his behalf are entitled to recover by direct action against the insurer.

A decision requires a construction of the policy sued upon and therefore presents a question of law. The meaning attributed by the respective parties to certain provisions of the policy is such that it appears essential to relate and analyze in some detail those in dispute.

The policy is entitled "Standard Workman's Compensation and Employers' Liability Policy," the introductory clause reading as follows:

"Does hereby agree with this Employer, named and described as such in the Declarations forming a part hereof, as respects personal injuries sustained by em-

ployees, including death at any time resulting therefrom as follows * * *."

Then follow a number of paragraphs included in the basic policy and also an endorsement entitled "Workmen's Compensation Endorsement" (afterwards referred to as the endorsement), which also contains a number of paragraphs. Paragraph One (a) to some extent, paragraph One (b) to a lesser extent, and particularly paragraph Five and certain provisions contained in the endorsement afford the main subject matter of the controversy. In fact, plaintiffs' cause of action is predicated largely upon paragraph Five in connection with the provisions contained in the endorsement. Notwithstanding this, it is necessary to have in mind the language of One (a) and One (b), and particularly the former, in order to understand the controversy relating to Five and the policy endorsement. Paragraph One (a) agrees:

"To pay promptly to any person entitled thereto, under the Workmen's Compensation Law [Ill.Rev.Stat.1945, c. 48 § 138 et seq.] and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due,

"(1) To such persons because of the obligation for compensation for any injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation law, and "(2)".

Then follows the promise to pay for medical, surgical, funeral and like expenses as required by the Workmen's Compensation Law. By the endorsement, the Workmen's Compensation Act referred to is that of Illinois (afterwards referred to as the Illinois Act).

It is plain that this paragraph standing alone limits the protection to the liability imposed by the Illinois Act. While there is no dispute but that the word "employees" contained in the introductory clause is sufficiently broad to include officials of a corporation, it is conceded by plaintiffs that an employer corporation is not liable under the Illinois Act to its officers unless they are injured while performing duties which are common to an ordinary workman. It is also conceded that the deceased at the time of receiving his injuries was acting in his capacity as president of the corporation and therefore was not covered by the Illinois Act.

By paragraph One (b) the company agrees to indemnify the employer against damages sustained by its employees as a result of the employer's negligence. We need not set forth this paragraph in detail as we think it has little if any materiality to the question before us. Plaintiffs concede, consistent with their complaint, that the injury sustained by the deceased was not the result of negligence on the part of the corporation. Furthermore, plaintiffs, even though such injury had been sustained as a result of the employer's negligence, could not proceed against the insurer until a judgment had been obtained against the employer. Paragraph G of the policy so provides. In other words, One (b) is solely an indemnifying provision. On the other hand, One (a) is an insurance provision running directly to such employees as come within its terms, the amount recoverable for injuries being fixed by the Illinois Act.

The real controversy, therefore, is whether the coverage provided by One (a) was enlarged or extended by subsequent provisions to include the decedent who admittedly was not covered by the Illinois Act because of the character of service he was performing at the time of his injury.

This brings us to paragraph Five, which in the main forms the basis for plaintiffs' contention. It provides:

"This agreement shall apply to such injuries sustained by any person or persons employed by this Employer whose entire remuneration shall be included in the total actual remuneration for which provision is hereinafter made, upon which remuneration the premium for this Policy is to be computed and adjusted, *and, also to such injuries so sustained by the President, any Vice-President, Secretary or Treasurer of this Employer, if a corporation.* (Italics ours.) The remuneration of any such designated officer shall not be subjected to a premium charge unless he is actually

performing such duties as are ordinarily undertaken by a superintendent, foreman or workman."

The last sentence of this paragraph indicates that it was the purpose to collect premiums only upon that part of a corporate officer's salary earned while performing the duties of a workman. In other words, that sentence is consistent with defendant's contention that a corporate officer was to be insured under One (a) only when he was performing services within the Illinois Act. However, this sentence is completely nullified by paragraph Six of the endorsement which provides:

"If this Employer is a corporation, the entire remuneration of the President * * * shall be disclosed and premium shall be paid thereon * * *."

Plaintiffs argue that paragraph Five, in connection with the endorsement, has the effect of increasing the coverage by including employees not covered by One (a) and particularly the officials of a corporation, regardless of the work in which they were engaged at the time of receiving an injury. On the other hand, defendant contends that the purpose of this paragraph is to define the class of employees who are protected under One (a) and One (b). In other words, this paragraph was merely to clear an ambiguity residing in One (a) and One (b) as to the class of employees who were intended to be protected.

We are of the opinion that there is not the slightest ambiguity as to those who are covered under either One (a) or One (b). As already shown, One (a) applies to all employees entitled to the protection of the Illinois Act, and such Act is made a part "of this contract as fully and completely as if written herein." The Illinois Act specifically defines those who are covered and those who are not. If an employee is under the Illinois Act, he is automatically entitled to the coverage provided by One (a). Otherwise, he is entitled to nothing. It would be just as reasonable to argue for an ambiguity in One (a) as to the amount of coverage. This, however, even though not specified, is made certain and definite by reference to the Illinois Act. Para-

graph One (b) is equally free from ambiguity. It indemnifies the employer for all liability imposed by law on account of damages awarded its employees because of injuries. From its very nature, there could have been no reason for classifying the employees against whom the employer was indemnified.

We have had much difficulty in attempting to comprehend defendant's argument regarding paragraph Five and the purpose ascribed thereto. In its brief, after conceding that "Paragraph 6 of the compensation endorsement provides that the employer shall pay a premium on the earnings of *all* officials," it states: "So now Clause Five reads *in effect* 'This agreement applies to every one on the payroll—including officials.' * * * In other words, Clause Five is amended by Paragraph 6 to mean that *everyone* is subject to the Policy if the Insurance Carrier collects a premium on him." Defendant's contention is finally summarized thus:

"In other words, there is nothing in Clause Five which says that anybody is to get any rights which are not described in the paragraphs *before* Clause Five. It merely says that everybody who works for this employer is included in the contract. It does not say that the contract is *enlarged* for those enumerated in Clause Five to give them something *more* than that which has already been provided. It merely lists the kind of people who are considered employes for whose benefit Clause One (a) was enacted and *against* whose demands Clause One (b) was enacted."

Thus, defendant concedes that it collected a premium upon all the salaries of the insured's officials including that earned in an executive capacity, as provided by paragraph Five and the endorsement, concedes that they are thereby made subject to the policy and are included in the contract, but argues that they are not entitled to any benefits under the Policy because they are not employees either under paragraph One (a) or One (b). This would be an appealing argument if made as an inducement for the sale of the policy, but it is not persuasive when made to escape liability. Under defendant's interpretation, para-

graph Five serves no purpose. It is meaningless. In fact, as to that portion of the paragraph applicable to corporate officials, the defendant so admits. In its brief it states: "So because of paragraph 6 [of the endorsement] the rest of Clause Five—after the second word in line 6th—is meaningless and could be stricken." This concession under defendant's theory could as well be made to the entire paragraph.

■ Paragraph Five expressly makes the policy applicable "also to such injuries so sustained by the President, any Vice-President, Secretary or Treasurer of this Employer, if a corporation." The very language itself indicates a purpose to extend the agreement in some manner to injuries sustained by the officers of the corporation beyond that provided for in (a) or (b). As shown, the president was already covered by the former when performing duties common to a workman and by the latter for injuries due to the negligence of the corporation. A reasonable interpretation of the clause, therefore, indicates that it was intended to include a situation of the instant character where an official was injured when performing executive duties. This interpretation is strengthened by the fact that defendant required and collected premiums upon the entire earnings of the decedent.

■ It is also pertinent to note that the policy contains no express limitation of liability such as the defendant now seeks to invoke. While it is true that an insurer is only liable to pay in accordance with its promises, this omission of express limitation is significant in view of the long continued use of this particular form of policy and the controversy which it has engendered. Furthermore, a careful analysis of the policy reveals other language favorable to the construction sought by the plaintiffs. Paragraph One (a) makes the provisions of the Workmen's Compensation Act a part of the contract "so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy." Thus the injuries referred to are not limited to those covered by the Illinois Act but include those covered by the policy. This is some indication that injur-

ies other than those covered by the Act were, or at least might be, included in the policy. Again, paragraph D provides: "The obligations of Paragraph One (a) foregoing are hereby declared to be the direct obligations and promises of the Company to any injured employee covered hereby." Use of the word "hereby" rather than "thereby" appears to be a recognition of direct obligations other than those covered by One (a).

The policy, in addition to the Workmen's Compensation Endorsement, also has an Occupational Diseases Act Endorsement. Each of these endorsements provides for cancellation without affecting the coverage provided by the other. Paragraph 2 of the Workmen's Compensation Endorsement provides:

"Insurance afforded under this Policy, in its application to this Act *and to personal injuries by accident in operations which are necessary, incident or appurtenant to, or connected with, the business operations subject to this Act,* [italics ours] is separate and distinct from, and may be canceled independently of, any insurance which may be afforded under the Workmen's Occupational Diseases Act of Illinois."

Thus it appears that two kinds of insurance are referred to, (1) that under the Act (meaning the Workmen's Compensation Act) and (2) that described by the language which we have italicized. Defendant says this clause makes no reference to paragraph Five. True, it makes no express reference thereto but it does expressly include "insurance afforded under this Policy." The language does not refer to the coverage provided under One (b) as provision is later made in the same paragraph for cancellation under One (b). The italicized language applies to the character of operations engaged in by the deceased at the time he received his injuries. Again, the language appears to be a recognition that the coverage of the policy is broader than that afforded by the Illinois Act, as specified in One (a).

■ We think the situation presented calls for an application of the well known rule that a policy must be construed so as to give effect to all of its provisions if

possible and not eliminate some of them as meaningless, as defendant would have us do. It calls for another equally well recognized rule, that in the construction of such policies ambiguities will be resolved in favor of the insured. Applying these rules of construction in connection with our study and analysis of the policy, we are of the opinion that plaintiffs stated a cause of action against the defendant. In reaching this conclusion we have studied and taken into consideration the numerous cases relied upon by the parties in support of their respective contentions.

No good purpose could be served in entering into a detailed discussion concerning such cases. This being an Illinois contract, we are obligated first to look to the court decisions of that State for guidance. Unfortunately there is no Illinois case exactly in point. By analogy, however, Morris v. Central West Casualty Co., 351 Ill. 40, 183 N.E. 595, is helpful. There the court construed a contract similar to the one in the instant case. The policy was issued to Morris as an employer. Obviously he was not a person entitled to compensation under the Illinois Act. Being an individual employer and not a corporation, he did not come within paragraphs One (a) or Five of the standard form. An endorsement, however, was attached to the policy which was quite similar to the language of paragraph Five in connection with the endorsement in the instant suit. In substance, it provided: "* * * the policy * * * is hereby specifically extended to apply to injuries * * * suffered by the employer * * * in the same manner and under the same conditions as it would apply to injuries and/or death suffered by an employee." The court construed this endorsement as being an extension to the coverage provided in the standard form, and in doing so stated (351 Ill. 45, 183 N.E 597):

"The manner or condition of the injury or death and the extent of the defendant's liability would be determined by the provisions of the Compensation Act. In other words, the defendant and Morris mutually agreed that the Compensation Act should be the standard to determine the defendant's liability under the policy and rider, and that, when such liability was thus determined, the provisions of the act should be also used as the yard-stick to measure the money payment incurred by the liability * * *."

In other words, the court held that Morris, while not under the Illinois Act and not entitled to the benefits thereof, was covered by the endorsement and that the amount of recovery was determinable by reference to the Illinois Act. Plaintiffs' measure of damages in the instant case, so we think, must be determined in like manner. Furthermore, the Morris case is authority for the proposition that notwithstanding the limited coverage of paragraph One (a) of the policy in the instant suit, the parties may by subsequent agreement enlarge such coverage. We think it immaterial whether they did so by a subsequent paragraph in the original policy or by an endorsement thereto or by a combination thereof.

The Supreme Court of Indiana in American Mutual Liability Ins. Co. of Boston v. Duesenberg, 214 Ind. 488, 14 N.E.2d 919, 16 N.E.2d 698, 117 A.L.R. 1293, had before it exactly the same form of policy as is here involved. It construed paragraph Five as extending the coverage so as to protect an officer of a corporation against accidental injury to the same extent and in the same amount as if he were under the Compensation Act.

Defendant relies strongly upon Wood v. Employers' Liability Assur. Corp., 41 F.2d 573, a decision of this court. A reading of the opinion, however, discloses that it is not a precedent controlling of the instant situation, and this notwithstanding that some of the reasoning appears to support defendant's argument. In the first place, the court was considering an endorsement provision which was sought to be made applicable to an employee engaged in farming and who, therefore, was not covered by the Indiana Compensation Act. The question was whether the endorsement was sufficient to cover one thus engaged. There was no corporation or official involved and consequently the court had no occasion to construe paragraph Five.

Furthermore, the Wood case, decided prior to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is doubtful authority inasmuch as we are now obliged to apply the law of the State wherein the contract is made. Although the Wood decision involved an Indiana contract, it certainly would not now be controlling if an Indiana contract were involved for the reason that the Indiana court, as shown, has decided the question here presented against the insurer. Furthermore, the Wood case, even if in point, is of doubtful authority in the instant case which involved an Illinois contract in view of the decision of the Supreme Court of Illinois in the Morris case.

We reach the conclusion that the court erred in dismissing plaintiff's complaint. The judgment of dismissal is therefore reversed and the cause remanded with directions to proceed in accordance with the views herein expressed.